UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GERALD W. BOTTERO,<br><br>Plaintiff,<br><br>v.<br><br>HOYA CORPORATION, VISION CARE DIVISION,<br><br>Defendant. | Case No. 14-cv-02528-BLF<br><br>**ORDER DENYING THE PARTIES' CROSS-MOTIONS FOR SUMMARY ADJUDICATION**<br><br>[Re: ECF 78, 86] |

This case involves an employment dispute between a corporate executive and his employer over the amount of an annual bonus. The parties both move for summary judgment, or in the alternative for summary adjudication, based in part on the terms of an Offer Letter signed by the parties on March 15, 2005. The Court finds, for the reasons outlined below, that disputed issues of material fact preclude granting either party's motion for summary judgment, and DENIES both parties' motions.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed this action in Santa Clara County Superior Court and, following a demurrer, filed a First Amended Complaint ("FAC"), which was timely removed to this Court on June 2, 2014. ECF 1. Plaintiff's FAC asserts claims for breach of written contract, breach of the covenant of good faith and fair dealing, and declaratory relief.

Following a successful motion to strike Defendant's Amended Answer, Defendant filed a Second Amended Answer ("SAA") on April 24, 2015. ECF 99.

The parties appeared for oral argument on their cross-motions for summary judgment on May 28, 2015.

**B.     Undisputed Facts**

The parties in this action dispute many of the purported facts that the other side contends are undisputed. The parties' briefing and evidence, however, shows that the following facts are undisputed.

Mr. Bottero began working for Defendant Hoya in Fremont, California, in 1988. After a series of promotions and relocations, Mr. Bottero became President of Hoya Vision Care Co. ("HVCC") on April 1, 2005. Later in 2005, Mr. Bottero relocated to Amsterdam, the Netherlands, and on October 1, 2009, relocated to Bangkok, Thailand. *See* Bottero Decl., ECF 78-5 at ¶ 3; Bottero Depo., ECF 93-3 at 21:17-22.

Mr. Bottero and Hiroshi Suzuki, the President and CEO of Hoya Corporation, signed a March 15, 2005 "Offer Letter," which outlined several terms regarding Mr. Bottero's compensation and benefits as HVCC's President. *See* Offer Letter, Bottero Decl., ECF 78-6 Exh. 1. This Offer Letter, which makes clear that Mr. Bottero's employment is at-will, *see id.* at Section 5(4), serves as the linchpin of the parties' dispute. Section 4(2) of the Offer Letter includes the following annual bonus calculation formula:

> Amount of annual bonus = [US$1,000,000 x {(ratio of Vision Care Company's annual sales for the current year to that of the previous year x 0.4) + (ratio of Vision Care Company's net income for the current year after income taxes to that of the previous year x 0.6)} - US$1,000,000] + US$140,000.

*Id.* at 1. The Offer Letter also includes one other provision relevant to the instant motions, at Section 5(5):

> Should any questions arise in connection with any matter not stipulated in this Offer Letter, or with any interpretation of the provisions of the Offer Letter, or should any disputes arise between HOYA Corporation and the Principal, the Company shall use its discretion to settle the matter.

*Id.* at 2.

From 2005 through 2010, Mr. Bottero was paid an annual bonus which ranged in value from $52,399 in 2008 to $491,251 in 2007. *See* Bottero Decl. ¶¶ 10-15.

After Messrs. Bottero and Suzuki signed the Offer Letter, they engaged in email correspondence where they discussed the Offer Letter. On April 7, 2005, Mr. Bottero wrote:

2

> [O]n the employment contract, I recommend to save money and not engage Mr. Suzuki of Paul Hastings. When I met with Mr. Hiroshi Suzuki in early February during a Vision Care meeting in Tokyo, we agreed not to do a contract. From my point of view, we do not need a contract because Mr. Arisawa's Offer Letter clearly defines the worst case scenario of my separation from Hoya.

Bernstein Decl., ECF 86-4 Exh. E at 2-3. Mr. Hiroshi Suzuki responded: "I affirm Gerry [Bottero's] comment that we intentionally avoided a contract." *Id.* at 2.[1]

In 2011, Hoya's production facilities in Ayutthaya, Thailand were flooded; the nation of Thailand experienced catastrophic flood damage in 2011, with estimated damages of over $45 billion. *See* Bottero Depo., ECF 86-7 at 243:3-244:14. Hoya reported the insurance recovery it received following this flood damage in its 2012 and 2013 Annual Reports: in the 2012 Report, Hoya recorded "extraordinary losses of about 6 billion yen [$58.82 million USD] due to the damage" to the company's buildings and equipment, which the company noted was "expected to be recovered by insurance during the next fiscal year." Bottero Decl., ECF 78-23 Exh. 14-2 at 18. The 2013 Report stated that Hoya's "[p]retax profit included ¥32,187 million in insurance income as part of compensation for damage caused by the Thai flooding in October 2011." Bottero Decl., ECF 78-17 Exh. 11 at 36.

On June 4, 2013, Mr. Bottero received an email from a Hoya employee named Yoshiyuki Kimura, which informed Plaintiff of Hoya's calculation of Mr. Bottero's 2011 and 2012 bonuses. *See* Bottero Decl., ECF 78-13 Exh. 8 at 3-5. This email calculated Mr. Bottero's 2011 bonus at negative $401,332.69, and his 2012 bonus as $6,251,451.92, which resulted in a total bonus for both years of $5,850,119.23. *See id.*

Then, on July 10, 2013, Mr. Bottero received an email from another Hoya employee, Yukio Hiraga, which rendered a different bonus amount that "[e]liminated Extra Ordinary Loss related to Thai floods . . . in both FY2011 and FY2012." Bottero Decl., ECF 78-14 Exh. 9 at 3-5. Hiraga's calculation rendered a 2011 bonus calculation of negative $144,839.51 and a 2012 bonus of $747,175.79, resulting in a total bonus for both years of $610,084.53. *See id.* At the time the

---

[1] Although the content of these communications is undisputed, the meaning and inferences to be drawn regarding the parties' intentions remain highly disputed.

FAC was filed, Defendant had not paid Mr. Bottero any bonus for the years 2011 or 2012. *See* Bottero Decl., ECF 78-5 at ¶ 25.

### C. Legal Claims and Summary Adjudication Sought by the Parties

Plaintiff argues that he is entitled to the $5.85 million bonus amount included in Kimura's June 4, 2013 email, because that amount was calculated using the formula outlined in Section 4(2) of the Offer Letter. *See, e.g.*, Mot. at 7. Defendant argues first that the Offer Letter was not a valid contract, and that even if it were, Hoya's roughly $610,000 offer was made to Plaintiff in good faith pursuant to Hoya's discretion under Section 5(5) of the Offer Letter to settle disputes that arose between Mr. Bottero and the company, and that as such it did not breach the terms of the Offer Letter. *See, e.g.*, Def.'s Opp. and Mot. at 4-5.

Plaintiff's seeks summary judgment, or in the alternative partial summary adjudication as to five issues: (1) "Bottero and Hoya entered into a contract," (2) "Bottero performed all or substantially all of the material duties and obligations required of him under the contract," (3) "All conditions required by the contract for Hoya's performance occurred," (4) "Hoya breached the contract with Bottero," and (5) "Bottero was damaged by Hoya's breach of contract." *See generally* Pl.'s Mot., ECF 78-3. Defendant opposes Plaintiff's motion, and separately moves for summary judgment, or in the alternative partial summary judgment, as to each of Plaintiff's causes of action. *See* Def.'s Opp. and Mot., ECF 86-1.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The Court draws all reasonable inferences in favor of the party against whom summary judgment is sought. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary,* 699 F. Supp. 756, 759 (N.D. Cal. 1987).

4

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.,* 690 F.Supp.2d 1001, 1004 (N.D.Cal.2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.,* 891 F. Supp. 510, 513–14 (N.D. Cal. 1995).

A material fact is one that could affect the outcome of suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett,* 567 F.3d 554, 562 (9th Cir. 2009). If the Court finds that a reasonable jury could find for the non-moving party, summary judgment is inappropriate. *See, e.g., Anderson,* 477 U.S. at 248. Conclusory and speculative testimony, however, is insufficient to defeat summary judgment. *See, e.g., Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).

The filing of cross-motions for summary judgment or partial summary judgment does not mean that the material facts are undisputed, and the denial of one motion does not necessarily require the granting of the other. *See, e.g.*, *Regents of Univ. of Calif. v. Micro Therapeutics, Inc.*, 507 F. Supp. 2d 1074, 1077–78 (N.D. Cal. 2007) (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2000). The cross-motions are to be evaluated in accordance with the requisite burden of proof facing each party. *See id.* at 1078.

### III. DISCUSSION

At bottom, the parties' cross-motions revolve around two central questions: first, whether the parties intended to enter into a contract; and second, if the Offer Letter is a valid contract, whether Defendant exercised its "discretion to settle" the bonus dispute pursuant to Section 5(5) of the Offer Letter.

### A. The Breach of Contract Claim

To prove a cause of action for breach of contract under California law, a plaintiff must plead "the existence of contract, plaintiff's performance of that contract or excuse for failure to perform, defendant's breach, and damage to plaintiff resulting therefrom." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) (citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476 at 570). To form a binding contract, there must be offer, acceptance, consideration, and mutual consent between the parties. *See, e.g.*, *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968). Whether the parties mutually consented is "determined under an objective standard applied to the outward manifestations or expressions of the parties." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006) (citing *Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998)). "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed." *Id.*

Plaintiff asserts that the undisputed facts show that the parties intended to enter into a contract when they signed the Offer Letter, while Defendant asserts the opposite. Neither is correct. As *Bustamante* makes clear, where the parties have produced conflicting evidence that the parties intended to enter into a contract, the Court must leave that determination to the ultimate factfinder. Here, such evidence is present. Defendant points to the email communications between Mr. Bottero and Mr. Suzuki in which Mr. Bottero states that "[w]e agreed not to do a contract . . . we do not need a contract because Mr. Arisawa's Offer Letter clearly defines the worst case scenario of my separation from Hoya," and where Mr. Suzuki stated that "we intentionally avoided a contract." Bernstein Decl. Exh. E at 2-3. Plaintiff responds by pointing to Mr. Bottero's deposition testimony, in which he testified that "I believe the Offer Letter was a contract." Bottero Depo., Jaffe Reply Decl., ECF 93-3 at 293:2-7.

This evidence creates a dispute as to whether the parties intended to enter into a contract when they signed the Offer Letter. Plaintiff's argument that the email correspondence constitutes improper parol evidence, *see* Pl.'s Opp. and Reply, ECF 93 at 5, is based on an incorrect reading of the parol evidence rule, because California law makes clear that "evidence that parties never

6

intended a writing to constitute a contract . . . is not objectionable under the parol evidence rule." *P.A. Smith Co. v. Muller*, 201 Cal. 219, 222 (1922); *see also Martindell v. Bodrero*, 256 Cal. App. 2d 56, 62 (1967) ("It is well established that parol evidence may be introduced to show that the parties never intended a writing to constitute a contract."). A reasonable jury could determine that the parties intended to enter into a contract when they signed the Offer Letter, inasmuch as a reasonable jury could determine that the parties had no such intention.

Because the entirety of Plaintiff's motion for summary judgment and its motion for partial summary adjudication is dependent on a finding that the parties intended to enter into a contract, the Court DENIES Plaintiff's motion in total. To the extent Defendant moves for summary judgment on the grounds that the Offer Letter was not a valid contract, its motion is also DENIED.[2]

Defendant argues, however, that *even if* the Offer Letter were found to be a binding, valid contract, it would nonetheless be entitled to summary judgment on Plaintiff's breach of contract claim because Section 5(5) vested Defendant with discretion to "settle" the bonus dispute between it and Mr. Bottero, which it claims it did by offering Mr. Bottero a bonus of about $610,000. *See* Def.'s Opp. and Mot. at 13-20. Defendant contends that its actions under Section 5(5) prevent Plaintiff from carrying his burden of persuasion on the question whether Defendant breached the contract. Plaintiff, in response, argues Section 5(5) does not vest Defendant with such discretion and that the provision is unconscionable and severable. *See* Pl.'s Opp. and Reply at 8-11.

Section 5(5) states: "Should any questions arise in connection with any matter not stipulated in this Offer Letter, or with any interpretation of the provisions of the Offer letter, *or*

---

[2] Defendant also argues that the Offer Letter is not a contract because it lacks essential terms and contains ambiguities, and that even if it was a contract, the parties mutually agreed to abandon its terms. *See, e.g.*, Def.'s Reply at 5-8. The Court finds both arguments unpersuasive. Because Mr. Bottero had a longstanding employment relationship with Hoya, the fact that the Offer Letter did not contain "reference to local regulations" or "specify the currency" does not render the contract illusory and unenforceable: the Offer Letter could reasonably be construed to be an agreement between the parties regarding a bonus calculation. *Cf. Abers v. Rounsavell*, 189 Cal. App. 4th 348, 356 (2010). Second, Defendant's argument that the parties in 2006 agreed to deviate from the bonus calculation does not show that the parties "abandoned" the contract because it does not itself show that the parties both intended to rescind the agreement. *Cf. Clarendon Am. Ins. Co. v. Gen. Sec. Indem. Co. of Arizona*, 193 Cal. App. 4th 1311, 1319 (2011) (finding that "the aggregation of numerous changes to the contract over time" can be evidence of abandonment).

*should any dispute arise between HOYA Corporation and the Principal*, the Company shall use its discretion to settle the matter." Offer Letter at 2 (emphasis added). California contract law makes clear that "[t]he whole of a contract is to be taken together, so as to give effect to every part." Cal. Civ. Code § 1641. A contract which includes a discretionary clause such as Section 5(5) is enforceable under California law unless the discretion renders the contract lacking in consideration. *See Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923 (1985). "[A] contracting party's discretionary power to vary the price or other performance does not render the agreement illusory if the party's actual exercise of that power is reasonable." *Powell v. Central Calif. Fed. Sav. & Loan Ass'n*, 59 Cal. App. 3d 540, 549 (1976).

Defendant contends that its offer of approximately $610,000 to Mr. Bottero was a reasonable exercise of its power under Section 5(5).[3] But this is ultimately a question of fact for the jury to determine – the Court cannot, as a matter of law, find that Hoya's actions were reasonable. *Cf. Schwarzkopf v. IBM, Inc.*, 2010 WL 1929625, at *8-10 (N.D. Cal. May 12, 2010) (holding that where plaintiff "failed to raise any genuine issues of material fact with respect to [defendant's] fulfillment of its obligation under the purported contract," defendant was entitled to summary judgment).[4] Here, Plaintiff alleges that Defendant failed to apply Section 4(2)'s bonus formula in its 2011 and 2012 bonus calculations, and offered him just over 10 percent of the amount he claims he was owed. Defendant is therefore not entitled to summary adjudication as to Plaintiff's breach of contract claim, and a jury must determine whether Defendant's exercise of its discretionary power under Section 5(5) was reasonable.

Plaintiff also argues that Section 5(5) is unconscionable, which the Court finds unpersuasive. Under California law, a contract must be procedurally and substantively

---

[3] Plaintiff argues that this $610,000 was a "settlement offer" and is inadmissible under Federal Rule of Evidence 408. Evidence of Defendant's $610,000 offer, however, was filed *with Plaintiff's own declaration. See, e.g.*, Bottero Decl., ECF 78-14 Exh. 9 at 3-5. Plaintiff cannot introduce this evidence and then preclude Defendant from relying on said evidence for purposes of the cross-motion for summary judgment.

[4] Additionally, the court in *Schwarzkopf* was tasked with interpreting a clause of the contract that vested IBM with the unilateral authority to reduce the amount of employee commissions. *See id.* at *6-9. The "discretion to settle" language contained in Section 5(5) is far broader, involving any dispute between the two parties.

8

unconscionable before a Court may invalidate the contract on the ground of unconscionability. *See, e.g.*, *Baker v. Osborne Development Corp.*, 159 Cal. App. 4th 884, 894 (2008). Plaintiff bears the burden to prove both unconscionability elements, *see Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1977), and has failed to do so. There is no evidence that Defendant had superior bargaining power to Plaintiff, a corporate executive, or that Mr. Bottero lacked "meaningful choice" in signing the Offer Letter. *See Baker* at 894; *see also Sonic-Calabasas, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (2013) (finding evidence that a nonstandard contract was "freely negotiated by parties of comparable bargaining power, such as may exist between an employer and a highly compensated executive employee," weighs against a finding of procedural unconscionability). Section 5(5) was conspicuously included in a two-page non-form contract, and lacks the oppression or surprise required of a contract that is procedurally unconscionable. Similarly, Section 5(5) does not "shock the conscience" such that it would be substantively unconscionable. *See Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 480 (2006). The inclusion of a provision in a contract that vests discretion with one of the parties is not so "overly harsh" as to render the Offer Letter substantively unconscionable. *Cf., e.g.*, *Baker* at 894.[5]

The Court finds that Defendant is not entitled to summary judgment as to Plaintiff's breach of contract claim under its interpretation of Section 5(5). The parties' cross-motions as to Plaintiff's first cause of action are therefore DENIED.[6]

### B. The Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Plaintiff did not move for summary adjudication of its second claim, for violations of the implied covenant of good faith and fair dealing. Implied in every contract under California law is

---

[5] Consistent with its unconscionability argument, Plaintiff contends that the Court should sever Section 5(5). *See* Pl.'s Opp. and Reply at 10. Because the Court finds that the provision is not unconscionable, severance would be inappropriate. Further, there is no indication that Defendant would have entered into the contract with Plaintiff had Section 5(5) been omitted. As Plaintiff concedes, a Court may only "sever a provision of a contract if it does not change the central intent of the contract." *See id.* The Court finds that severing Section 5(5) would change the intent of the parties, and that the provision therefore cannot be severed.

[6] The Court need not reach Defendant's argument, in the alternative, that there are triable issues of material fact as to its affirmative defenses of commercial impracticability and equitable reformation. *See* Def.'s Mot. and Reply at 23-24.

the implied covenant of good faith and fair dealing, which requires that "neither party [] do anything which will injure the right of the other to receive the benefits of the agreement." *See Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (2008). The implied covenant will "only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Id.* (citing *Carma Developers (Cal.) Inc. v. Marathon Development Cal. Inc.*, 2 Cal. 4th 342, 374 (1992).

Defendant moves for summary adjudication of this claim on the grounds that "HOYA's position concerning plaintiff's bonus [] is objectively reasonable and indicative of a good faith effort to further the purpose of the Offer Letter." *See* Def.'s Mot. at Reply at 21. The Court finds, for the same reasons outlined above, that summary adjudication of this question is inappropriate because the Court cannot, as a matter of law, determine that Defendant's bonus offer to Plaintiff was a reasonable exercise of its power to act under Section 5(5)'s discretionary clause. *See, e.g.*, *Schwarzkopf* at *11 ("The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith."); *see also Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354, 364 (1997) (finding a triable issue as to the implied covenant in a contract with a discretionary provision). As such, Defendant's motion for summary adjudication of Plaintiff's second cause of action is DENIED.

## IV. ORDER

For the foregoing reasons, the parties' cross-motions for summary judgment, or in the alternative for summary adjudication of issues, are DENIED.

**IT IS SO ORDERED.**

Dated: June 18, 2015

_____
BETH LABSON FREEMAN
United States District Judge

10